UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENRIK DZHANIKYAN,<br>Petitioner,<br>v.<br>FERETI SEMAIA, et al.,<br>Respondents. | Case No. 5:26-cv-05437-SSC<br><br>MEMORANDUM AND ORDER |

Petitioner, a noncitizen in immigration custody, brings this counseled habeas petition seeking release. Petitioner brings procedural and substantive due process claims as well as claims challenging his detention without a warrant. Because Petitioner has not shown that the process provided to him is insufficient, that his detention is punitive, or that he was arrested without a valid warrant, the Court denies the petition.

**I**

On September 17, 2026, Petitioner Genrik Dzhanikyan filed a counseled petition for writ of habeas corpus by a person in federal custody pursuant to 28 U.S.C. § 2241. (ECF 1.) Petitioner is a Russian citizen currently detained by Immigration and Customs Enforcement (ICE) at the Adelanto ICE Processing Center in Adelanto, California. (*Id.* at 2–3.)

The following facts are as alleged in the petition. Petitioner entered the United States in 2008 with an O-3 visa as a derivative of his father and maintained valid O-3 nonimmigrant status through September 1, 2014. (*Id.* at 5.) On or about April 1, 2013, Petitioner's father filed an application for asylum and for withholding of removal and included Petitioner as a derivative applicant. (*Id.*) The Department of Homeland Security (DHS) approved and issued Petitioner an Employment Authorization Document (EAD) from November 23, 2013 to November 22, 2014. (*Id.*) In December 2016, Petitioner's U.S. citizen sister petitioned for him as the sibling of an adult U.S. citizen, and in January 2017, the petition was approved. (*Id.* at 5–6.) On May 18, 2018, shortly after turning 18 years old, Petitioner filed his own application for asylum while maintaining his derivative status on his father's application. (*Id.* at 6.) DHS approved and issued Petitioner another EAD from June 2018 to June 2020. (*Id.*)

In 2019, Petitioner's parents obtained lawful permanent resident status and petitioned for Petitioner as the child of a lawful permanent resident. (*Id.*) U.S. Citizenship and Immigration Services (USCIS) approved the petition. (*Id.*) In 2020, Petitioner was convicted of a misdemeanor DUI and sentenced to three years' probation, "[one] day credit for time already served, fines, and classes/programs." (*Id.*) In the same year, Petitioner applied for cancellation of removal based on exceptional and extremely unusual hardship to his parents. (*Id.*) In 2022, ICE prosecutors agreed to a dismissal of Petitioner's removal proceedings so he could pursue adjustment of status through his mother's petition. (*Id.*) An immigration judge dismissed court proceedings, and Petitioner's asylum and cancellation applications were also dismissed. (*Id.*)

In 2022, Petitioner filed an application to register permanent residence or adjust status. (*Id.* at 6–7.) The application was denied, but he was issued another EAD, valid through July 18, 2025. (*Id.* at 7.) Within 30 days of the denial, Petitioner filed a new asylum application. (*Id.*) On December 18, 2025, USCIS issued a Notice to Appear, and his first hearing was scheduled for June 25, 2026. (*Id.*) Before the hearing was held, on or about June 1, 2026, Petitioner was arrested for a DUI, and he was convicted on September 4, 2026. (*Id.*)

Prior to the conviction, on June 28, 2026, ICE officers arrested Petitioner. (*Id.*) Petitioner alleges that ICE officers were waiting for him "outside his home" and pulled him out of the vehicle he was in. (*Id.*) Petitioner alleges he was arrested "without any . . . display or mention of an arrest warrant." (*Id.* at 7–8.)

Petitioner brings five claims: (1) a procedural due process claim alleging that his detention without a pre-deprivation hearing is unjustified; (2) a substantive due process claim alleging that his detention bears no reasonable relation to any legitimate government purpose; (3) a claim for violation of 8 U.S.C. § 1357(a)(2) alleging that Respondents arrested him without probable cause and a warrant; (4) a claim for violation of 8 C.F.R. § 287.8(c)(2)(ii) alleging Respondents arrested him without a warrant; and (5) a claim for violation of the Fourth Amendment alleging that his arrest was without probable cause and that "he was already placed in removal proceedings." (*Id.* at 10–13.) He seeks release, among other relief. (*Id.* at 13–15.)

On September 25, 2026, Respondents filed an answer. (ECF 7.) Respondents argue that Petitioner has overstayed his visa and was not previously released from ICE custody, has no due process right to a pre-

detention hearing, and otherwise has no due process right to immediate release from detention. (*Id.* at 2.) Respondents note that Petitioner "appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez*[,]" and that to the extent Petitioner has not requested such a hearing from the immigration court, Petitioner "has not yet properly exhausted [his] available administrative remedies, and [his] [p]etition is defective on that basis." (*Id.* at 2–3.)

On September 28, 2026, Petitioner filed a traverse. (ECF 8.) On October 13, 2026, the Court held a hearing on the petition. (ECF 9.) At the hearing, the Court provided Petitioner leave to file a supplemental brief on a point of law argued during the hearing related to the relative timing of the issuance of the I-213 and arrest warrant. (ECF 12.) Petitioner filed the supplemental brief the next day. (ECF 11.) The Court found that the brief advanced a new claim for habeas relief. Specifically, that Petitioner's arrest violated the Fourth Amendment because it was executed pursuant to an administrative warrant, rather than a judicial warrant, while he was within the curtilage of his home. (*Id.* at 4.) The Court allowed Respondents the opportunity to respond, which they did. (ECF 13; ECF 14.)

## II

Relief in the form of a writ of habeas corpus may be granted to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

## III

Petitioner argues that his detention violates procedural and substantive due process, alleging that he did not receive a pre-detention hearing to determine whether he posed a flight risk or danger to the community, and that detention is not warranted in his case. (ECF 1 at 10–12.) The Court disagrees.

### A

Petitioner brings a procedural due process claim, explaining that the Due Process Clause "prohibits the government from imposing even permissible physical restraints without adequate procedural safeguards." (*Id.* at 10.)

#### 1

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment applies to noncitizens[1] "whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Procedural due process is governed by a two-step analysis." *Hewitt v. Grabicki*, 794 F.2d 1373, 1380 (9th Cir. 1986). A court must

---

[1] Under the Immigration and Nationality Act (INA), the term "alien" means "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). Following the lead of the U.S. Supreme Court and the Ninth Circuit, the Court uses the term "noncitizen" in place of "alien." *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).

first determine whether a liberty or property interest exists, and, if so, then it must determine what process is due. *Id.*

To determine whether the government has provided sufficient procedural due process to deprive an individual of life, liberty, or property, courts apply the three-factor *Mathews* test considering: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[2] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**2**

Petitioner alleges that his protected liberty interest comes not only from the fact that he has been "living freely" in the United States for 18 years but also from the fact that he entered with a valid visa and applied for multiple applications such that the government "was aware of his presence." (ECF 8 at 5.)

Some courts have found that noncitizens who have been released on parole have a liberty interest in remaining at liberty. *E.g.*, *Kamel v. Santacruz*, No. 5:26-cv-03481-BFM, 2026 WL 1965112, at *2 (C.D. Cal. July 2, 2026) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Those cases rely on the notion that a parolee "relies on at least an implicit promise that parole will be revoked only if she fails to live up to the parole conditions." *Id.* (citation modified). Petitioner cites similar

---

[2] The Ninth Circuit has "assume[d] without deciding" that *Mathews* applies in the immigration detention context. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022).

authority in support of his claim, but this analogy fails because Petitioner was not previously released on parole. (ECF 8 at 6 (citing *Anderson v. Chernut*, No. 1:26-cv-01960-DAD-CKD, 2026 WL 809990, at *2 (E.D. Cal. Mar. 24, 2026) (finding that petitioner obtained a liberty interest in her continued release when she was previously granted advance parole and Deferred Action for Childhood Arrivals)).)

Petitioner also cites decisions finding a conditional liberty interest where the government's knowledge of an individual's presence and decision not to detain them gives rise to an inference that an asylum applicant is not a flight risk or danger to the community.[3] *See Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441 (N.D. Cal. Feb. 25, 2026);[4] *Kalkan v. Chestnut*, No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112 (E.D. Cal. Mar. 20, 2026).

The Court is not persuaded to apply such reasoning in this case. As one court explained, such reasoning "read[s] intentionality into what used to be, in the Court's understanding, a deliberate separation

---

[3] Petitioner cites *Ramirez-Serna v. Mullin*, No. 5:26-cv-02384-DTB, 2026 WL 1514337, at *6 (C.D. Cal. May 28, 2026) for the proposition that "Petitioner developed a substantial liberty interest in remaining out of custody based on the life he built in the United States[.]" (ECF 8 at 5.) But the facts of that case are distinguishable: the petitioner was arrested without a warrant and the I-213 form contained information, including a felony and prior removal, related to an individual who stole the petitioner's identity. *Id.* at *2. Unrelatedly, the petitioner was a beneficiary of a Form I-918 U-Visa. *Id.* at *6. The petitioner had been in the country 34 years and had no criminal history. *Id.* Based on these facts, the court found that the petitioner developed a substantial liberty interest in remaining out of custody. *Id.* No such circumstances are present here.

[4] In *Kharitonova*, the government insisted that it did not have to provide the petitioner with a bond hearing. 2026 WL 531441, at *1. The opposite is true here. (ECF 7 at 2.)

between the mechanisms that enforced our immigration law and those that adjudicate requests for humanitarian relief, and is now something closer to bureaucratic neglect." *Wang v. Janecha*, No. 5:26-cv-4447-BFM, 2026 WL 2584800, at *2 (C.D. Cal. Aug. 31, 2026). Regardless, the facts giving rise to such an inference are not before the Court in this case.

Here, Petitioner's application to register permanent residence or adjust status was denied in 2023. (ECF 1 at 6–7.) On December 18, 2025, USCIS issued a Notice to Appear, placing Petitioner back in removal proceedings. (*Id.* at 7.) At that point, his most recent asylum application was pending for a little over two years. (*Id.*) And though Petitioner's first hearing was scheduled for June 25, 2026, he was arrested for a DUI 25 days prior. (*Id.*)

Instead, the Court finds that Petitioner, having overstayed his nonimmigrant visa does not have a conditional liberty interest protected by the Due Process Clause. *See, e.g.*, *Melkumyan v. Semaia*, No. 5:26-cv-03019-MBK, 2026 WL 1772761, at *2 (C.D. Cal. June 16, 2026) (denying procedural due process claim of individual who overstayed his visa); *Herrera v. Blanche*, No. C26-1684-MLP, 2026 WL 1733493, at *2 (W.D. Wash. June 16, 2026); *Jemna v. Warden of Otay Mesa Det. Ctr.*, No. 3:26-cv-00725-RBM-VET, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026) (finding that although an individual admitted on a B-2 visa "has a private interest in remaining free, he does not possess the same liberty interest as noncitizens who were previously detained and released pursuant to conditional release or parole").

But even assuming a protected liberty interest sufficient to proceed to the *Mathews* factors, and further that Petitioner's private interest in being free weighs in his favor, the risk of erroneous

deprivation is low given the significant process afforded to him, and the government's interest is high especially considering Petitioner's arrest preceding his detention (and ultimate conviction).

It is true that some courts have found that a higher risk of erroneous deprivation occurs where petitioners were previously released from detention upon a finding that they do not pose a danger or flight risk. *See, e.g.*, *Larios v. Albarran*, No. 25-cv-08799-AMO, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard."); *Jemna*, 2026 WL 788172, at *5 ("A noncitizen's conditional release or parole from ICE custody reflects that immigration officers necessarily determined the noncitizen was neither a flight risk nor a danger to the community."). But, again, Petitioner had no such prior finding.

Further, the law entitles him to a significant amount of process in connection with his detention including arrest with a warrant, a prompt custody decision, and the right to seek a custody redetermination before an immigration judge and to appeal the immigration judge's decision, if necessary. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19(a)–(b); *see also* *Rodriguez Diaz*, 53 F.4th at 1197. The record indicates that Petitioner received such process. As the Court discusses below, Petitioner was arrested pursuant to a warrant. (ECF 7-1 at 2, 5; ECF 7-2.) And, as Respondents note, Petitioner is entitled to request and receive a custody redetermination hearing. (ECF 7 at 2.) Petitioner has not alleged that he was deprived of such. Rather, Petitioner argues that such a hearing

"does not cure the lawfulness of his arrest and detention."[5] (ECF 8 at 2.)

**B**

Petitioner also argues that his detention violates substantive due process because it does not bear a reasonable relationship to a legitimate governmental purpose of preventing against danger or flight risk. (ECF 1 at 10–12.) The Court is not persuaded.

The Ninth Circuit has held that an individual detained under civil process "cannot be subjected to conditions that 'amount to punishment.'" *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (quoting *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979)). A detention is "punitive" where it is "intended to punish," is "excessive in relation to [its non-punitive] purpose," or is "employed to achieve objectives that could be accomplished in so many alternative and less harsh methods." *Id.* at 933–34 (alteration in original) (citations omitted).

Here, Petitioner has been detained less than four months. Though the Court recognizes the hardship imposed by any period of detention,

---

[5] Petitioner argues that *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), is inapposite to this matter because it addresses the statutory detention authority applicable to noncitizens who entered the United States without inspection and were later apprehended in the interior. (ECF 8 at 2.) But the case also addressed visa overstays stating that "[b]ecause § 1226 is not limited to [noncitizens] deemed 'applicants for admission,' the [noncitizens] subject to § 1226 include other [noncitizens], such as admitted [noncitizens] 'who overstay or violate the terms of their visas' or who 'engage in conduct that renders them removable.'" *Rodriguez Vazquez*, at 1167 (quoting *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026)). As Respondents concede that Petitioner is detained under the statutory scheme of § 1226(a), Petitioner would be entitled to a bond hearing were he to request it. (ECF 7 at 2.)

Petitioner's period of detention is not so lengthy as to rise to a substantive due process violation. *See, e.g.*, *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1083 (N.D. Cal. 2024) (finding that a duration of 30 months in immigration detention suggests a potential substantive due process violation); *United States v. Torres*, 995 F.3d 695, 709 (9th Cir. 2021) (concluding that 21 months of pretrial detention for a person charged with a criminal offense "does not yet violate due process" but is "approaching the limits of what due process can tolerate").

Petitioner also argues that his detention "bears no 'reasonable relation' to any legitimate government purpose" given his multiple applications for relief before the USCIS and immigration courts, his new pending applications, his appearances at every hearing and interview required of him, his ties to the community, and his lack of criminal convictions other than his 2020 and 2026 DUIs. (ECF 1 at 11.) The proper avenue to challenge this is a bond hearing. *See Martinez Leiva v. Becerra*, No. 23-cv-02027-CRB, 2023 WL 3688097, at *5 (N.D. Cal. May 26, 2023); *I.E.S. v. Becerra*, No. 23-cv-03783-BLF, 2023 WL 6317617, at *7 (N.D. Cal. Sep. 27, 2023) ("[Petitioner's] argument that his prolonged detention is excessive in light of alternatives . . . is an argument that [petitioner] should have an opportunity to prove at a bond hearing."). As the record makes clear, a bond hearing is available to Petitioner and he has not requested such a bond hearing.

Accordingly, Petitioner's procedural and substantive due process claims fail.

**IV**

Petitioner brings four claims pertaining to his arrest: (1) a claim for violation of 8 U.S.C. § 1357(a)(2) alleging that Respondents arrested him without probable cause and a warrant; (2) a claim for violation of 8

C.F.R. § 287.8(c)(2)(ii) alleging that Respondents arrested him without a warrant; (3) a claim for violation of the Fourth Amendment alleging that his arrest was without probable cause; and (4) the claim raised in the supplemental brief arguing that his arrest violated the Fourth Amendment because it was executed pursuant to an administrative warrant, rather than a judicial warrant, while he was within the curtilage of his home. (ECF 1 at 12–13; ECF 11.) None has merit.

**A**

Because the first three claims arise from Petitioner's allegation that he was "arrested and detained by ICE without any warrant or reasonable suspicion[,]" the Court addresses them together. (ECF 1 at 3, 8, 12–13.)

Petitioner has not met his burden to show unlawful detention based on a warrantless arrest. The petition purports to be verified under 28 U.S.C. § 2242. (*Id.* at 16.) Though the verification is by counsel alone, it states that it is submitted on the behalf of Petitioner and that counsel has discussed the events described with Petitioner. (*Id.*) Petitioner alleges that "[o]n information and belief," Petitioner was detained "without an arrest warrant" and that the officers who arrested him did not "display or mention" such warrant. (*Id.* at 3, 8.) But the petition provides no basis for personally knowing that the arresting officers lacked a warrant. *See Runnels v. Rosendale*, 499 F.2d 733, 734–35, 734 n.1 (1974) (allegations of a verified complaint could be taken as true for evidentiary purposes where they reflect matters within the personal knowledge of the plaintiff).

Contrary to Petitioner's contention, the I-213 attached to Respondents' answer explains that Petitioner was arrested as part of an operation which was conducted "pursuant to a warrant of arrest issued

by" ICE and that the officers served Petitioner with "Form I-200 Warrant for Arrest of Alien[.]" (ECF 7-1 at 2, 5.) Respondents also attach to their answer the warrant, which indicates that Petitioner was served with the warrant on June 28, 2026—the same day that he was detained—and includes the authorized immigration officers' signatures. (ECF 7-2 at 1.)

Petitioner attacks the warrant on three bases. First, he argues that the "Certificate of Service is filled out and signed by" a different officer than the supplemental page attached thereto. (ECF 8 at 4.) Petitioner has provided no authority suggesting that the signatures of two different officers on the warrant makes the warrant invalid.

Second, he argues that the warrant provided by Respondents "has not been authenticated nor submitted with a declaration from an authorized representative." (*Id.*) However, at the October 13, 2026 hearing on the petition, Respondents' counsel properly authenticated the warrant on the record.

Third, at the hearing, Petitioner's counsel stated that the I-213 appears to have been drafted at 12:40 p.m., after the time of arrest, which occurred at 6:00 a.m. (ECF 7-1 at 1, 3.) The Court provided Petitioner's counsel leave to file supplemental briefing to demonstrate why such sequencing is unlawful. That briefing instead offers only that "[w]hile there is no explicit requirement in statute or regulation that a Form I-213 is . . . required prior to every I-200 warrant[,]" ICE must review a noncitizen's records to establish the necessary facts to determine probable cause. (ECF 11 at 2.) Petitioner states that it is the "general standardized and/or common practice of ICE" to "prepare and review the Form I-213," but provides no authority for this claim. (*Id.*) Rather, Petitioner appears to reiterate the argument that

Respondents did not have "probable cause and reason to believe the person to be arrested is illegally in the United States." (*Id.* (citing 8 C.F.R. § 287.8(c)).) Petitioner claims that material contradictions in a I-213, reliance on facts first learned after arrest, or deficiencies in the evidence of service "can undermine DHS's showing that their requirements were satisfied." (*Id.*)

Petitioner cites distinguishable cases. In *S.B. v. Bondi*, the court found a warrant was invalid because the respondents submitted that ICE agents issued the warrant "in the field" after the petitioner was arrested. No. 26-1707 (DWF/ECW), 2026 WL 710624, at *3 (D. Minn. Mar. 13, 2026). Further, the respondents attached the warrant without any accompanying documents that would establish what evidence formed the basis for its issuance, and the I-213 was dated over 10 days after the petitioner's arrest and provided no indication of which details formed the basis for the warrant. *Id.* Likewise, in *Coria Ramirez v. Albarran*, the court found the petitioner was likely to succeed in demonstrating that the warrant was not valid because the warrant itself included no basis for probable cause; the record suggested that the "X" marks checking the boxes identifying grounds for probable cause were added only after the petitioner's arrest. No. 26-cv-06973-CRB, 2026 WL 2001151, at *3 (N.D. Cal. July 10, 2026). And in *Da Silva Santos v. Chestnut*, the court found that the petitioner was arrested without a valid warrant because the I-213 indicated that ICE officers arrested the petitioner before issuing the warrant and included information contradicting the warrant's stated grounds for probable cause. No. 1:26-cv-6439-TLN-JDP, 2026 WL 2620362, at *4 (E.D. Cal. Sep. 4, 2026), *report and recommendation adopted*, 2026 WL 2654656 (E.D. Cal. Sep. 9, 2026).

No such circumstances are present here. Petitioner has failed to show that the fact that the I-213 was drafted at 12:40 p.m. necessarily means the warrant was issued after the arrest and points to no other facts indicating as much. The I-213 states that the operation to locate Petitioner was "conducted pursuant to a warrant of arrest" (ECF 7-1 at 2), and the now-authenticated warrant is attached to Respondents' answer (ECF 7-2).

It is Petitioner's burden to show unlawful detention, and here he has not shown the absence of a valid arrest warrant. *See Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (in "federal habeas proceedings, it is the petitioner who bears the burden of proving his case"); *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995) ("The burden of establishing a basis for exclusion of evidence from a government record falls on the opponent of the evidence, who must come forward with enough negative factors to persuade the court not to admit it."); *see also* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true[.]").

**B**

Petitioner's supplemental brief brings a new claim under the Fourth Amendment, alleging that because the I-200 is an administrative warrant and not a judicial warrant, Petitioner was unreasonably seized and arrested within the curtilage of his home, specifically as he "entered his vehicle in their driveway." (ECF 11 at 4.) Petitioner cites *Kidd v. Mayorkas*, 734 F. Supp. 3d 967 (C.D. Cal. 2024), in which the court held that administrative warrants issued by immigration officers were insufficient to enter constitutionally protected areas of a home and that ICE's "knock-and-talk" policy violated the

Fourth Amendment and the Administrative Procedure Act. *Id.* at 979–80. The brief provides no factual support for the assertion that he was arrested on the curtilage but instead just argument of counsel. Notably, the verified petition alleges that "ICE officers were waiting for [Petitioner] outside his home" and that Petitioner "was in a vehicle" with his parents. (ECF 1 at 7.) It does not say that the car was in the driveway.

In response to this new argument, Respondents provide a detailed declaration from an officer who was present for Petitioner's apprehension and detention stating that Petitioner was *not* arrested within the curtilage of his home, but on the street outside of his home. (ECF 14-1.) The declaration provides that the Enforcement and Removal Operations "team arrived on the scene of Petitioner's last known address at approximately 6AM PST." (*Id.* at 2.) The team "noted that the vehicle which was involved in [Petitioner's] most recent DUI arrest was parked on the street in front of the residence, along with a BMW parked partially in the driveway, and a black Lexus parked on the street in front of the home." (*Id.*) After "surveilling the property for several hours, the team noted an individual matching the description of Petitioner leaving the residence, passing through the front yard of the property, exiting the yard and closing the gate to the fence behind him[.]" (*Id.*) The individual, later identified as Petitioner, "was observed entering the passenger side of the black Lexus which was parked on the street[,]" at which point "the team initiated contact with Petitioner, verified Petitioner as the subject of the administrative arrest warrant, and took him into custody[.]" (*Id.*)

"[P]ublic drives, sidewalks, or walkways . . . are not within the curtilage of the home when they are not enclosed by a gate or fence."

*United States v. Clarkson*, No. 1:13-cr-44, 2015 WL 328350, at *4 (E.D. Tenn. Jan. 26, 2015) (quoting *United States v. French*, 291 F.3d 945, 953 (7th Cir. 2002)); *United States v. Purifoy*, Nos. 08-20238, 11-15044, 2014 WL 1672119, at *7 (E.D. Mich. Apr. 28, 2014) ("A public street falls far outside a home's curtilage; indeed, it is not property from which defendant had a right to exclude anyone."); *Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").

Having provided no evidence to contradict the detailed declaration proffered by Respondents, Petitioner has failed to meet his burden as to this new claim.

**ORDER**

For the reasons set forth above, **IT IS ORDERED** that Judgment shall be entered denying the petition.

DATED: October 23, 2026

HONORABLE STEPHANIE S. CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE